[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In the first above-captioned case, the plaintiff Shoreline Concrete Co, Inc. seeks to foreclose a mechanic's lien against the defendants Harry and Beverly Keller. The Kellers are the owners of a commercial building in the town of Branford and Shoreline furnished concrete in the course of its construction.
The second case involves the claims of the Kellers against William Howard, who contracted with them to construct the building in question.
When the first case proceeded to trial, it became obvious that issues in the second case would also be litigated and the cases were consolidated for trial. The parties were granted permission to file amendments, answers and replies so that the pleadings were closed and in order.
The court is confronted with a situation in which all counsel conceded that they did not know what the contract between Howard and Keller called for. (Since Mrs. Keller was not involved in any negotiations, the singular "Keller" will be used in this discussion, though they are both plaintiffs and defendants in the two cases). The contract documents consist of a "quote," Exhibits 40 and TT and a series of continuation sheets, plus various plans and sketches.
With Keller, the owner, acting as his own general contractor, Howard was hired to erect a commercial building on Keller's property. This project was the result of Keller's previous CT Page 4526 building on the site having to be demolished because of sub-standard sub-soil conditions which caused the building to sink and settle so drastically as to become unsafe.
Seeking to salvage something from that ill fated venture, Keller had the structural steel from that building stockpiled for use in the new building.
Though the parties frequently disagreed as to the causes, there ensued in the course of construction a variety of delays. The extent of the delays was also debated, but the court heard testimony about problems with the zoning enforcement officer, change orders, unanticipated delays, site problems, sub-contractor delays, corrective work and extra work to name a few.
Confronted with claims for unpaid bills, extras, unauthorized extras, defective work, overruns, and financial loss due to incomplete work, the court is grateful to counsel for their cooperation in preparing for the court's assistance a detailed "Submittal of Claims For Determination," outlining the areas of agreement and listing the items in dispute.
 I A. With respect to the mechanic's lien of Shoreline Concrete, the defendant Keller has defended on two grounds. First, he points to a waiver of lien signed by a Shoreline officer and then argues that Howard, who hired Shoreline as a sub-contractor, was paid sufficient funds to pay Shoreline in full.
This latter point is debatable, depending on which party's accounting version is accepted, and requiring a determination of the good faith payments made to Howard by Keller before he received notice of the filing of the lien.
Determinative of the issue is this language of the waiver signed by Shoreline:
 "With respect to the premises known as 2 LIESL LANE . . . the RELEASOR for itself and its successors and assigns agrees not to file any lien or make any claims against or in respect to the Premises, any building or other improvement erected or made thereon or any interest of Releasee hereon for work done or materials furnished by the Releasee or upon any other ground whatsoever; further the Releasor does CT Page 4527 hereby release the Premises, all buildings, and other improvements hereon and any interest of Releasee therein from any and every lien, charge or claim that the Releasor might at any time have against the same, or any part upon any other ground whatsoever, and which grows out of or is in any way connected with the erection or construction of any building or other improvement on the Premises."
This language requires the conclusion that Shoreline executed a valid waiver in favor of Keller and thus cannot proceed to foreclose its lien.
While much attention was given to language in the body of the waiver inserted by the officer of Shoreline who signed the waiver stating "Balance of $4,523.31," the court interprets this as a mere statement of the amount owed at the time of the execution. Regardless of the interpretation, the impact of the waiver language remains the same.
B. The court granted permission to the plaintiff Shoreline to amend its complaint by adding a second count alleging unjust enrichment. There was no disagreement over the fact that Shoreline provided a total of $21,612 worth of concrete to this project and that there was a balance due of $11,930. These figures represent the reasonable value of the material furnished, and the amount by which Keller has been enriched.
Judgment may enter in the first case on the second count for the plaintiff Shoreline to recover of the defendants Harry and Beverly Keller the sum of $11,930.
 II
In the second case, Howard claims he is owed $60,935.15, the Kellers claim they are owed $62,391.49 by Howard. The court will proceed in the order the various items are covered in the joint "Submittal" referred to above.
In evaluating these items, the court has had to allow for the conflicting testimony of the parties, opinions offered by the engineers, and the numerous exhibits. Exhibit 40, the "contract," was of limited value because a portion was authored and signed only by Mr. Keller. That portion contained language restricting extra work, etc. but it is obvious that many changes and extras proceeded without a writing directed to the already vague CT Page 4528 language of Exhibits 40 and TT and the continuation sheets, often after a short discussion. Adding to the confusion is the fact that work often proceeded without specific plans or specifications, with both sides relying on oral descriptions.
It should also be noted that Howard and Keller had no agreement as to how the charges for extras would be computed, but Howard states he charged the "normal," i.e., 20% for overhead and 10% for profit.
SCHEDULE B
 Payments to others by Keller
Howard agrees Keller is entitled to a credit of $1332.82, but disputes a Keller claim for $1630.45. Keller has produced a check to The Steel Store dated October 6, 1992 for structural steel. Howard has not refuted this payment. Keller is therefore entitled to the full credit claimed of $2963.27.
SCHEDULE C
 Payment to others to complete project
 1. This involves Keller's claim for the cost of roof repairs, $6905. After evaluating the testimony on this item, the court finds Howard responsible for a portion of this expense — $2985 for additional leader pipes and re-sealing.
2. Keller seeks $11,657.61 here, the total cost of the building's overhang and facia. He also argues that Howard's payment schedule be reduced by their agreed upon allocation to Howard of $9898 for "overhang." Assuming Howard did nothing on this item, Keller would have him pay for the overhang, despite their apparent agreement to remove it from the contracted work and have Keller sub-contract for it. The court has had read back the testimony of Mr. McCarty who did this job. It is the conclusion of the court that Keller is entitled to a credit against Howard for the cost of re-aligning iron work and remedial trim work, a total of $2812.84.
3. Here Keller claims $2600 due from Howard after Howard agreed the plumbing he was to do for $3900 would be removed from the contract and sub-contracted by Keller. Why Howard should pay for Keller's plumber is not clear to the court. This claim is CT Page 4529 denied.
4. Not applicable, see below Schedule D, #8.
5. Under item 6 of the continuation sheets, Howard is shown as receiving nothing toward "site work" to be done in the amount of $2700. It appears obvious, based on uncontroverted testimony that he did site work. Nor was evidence presented to justify charging Howard with what was described by the sub-contractor retained by Keller to be landscaping — an item removed from the Howard contract by Keller.
6 7. These items totalling $1250 are awarded to Keller, the sidewalk having been left unfinished and the repair required.
SCHEDULE D
 Contract Amount and Claims For Additional Work (Only disputed items are addressed)
 1. Foundation a-f, i. These items are found to be properly credits due Mr. Howard in the amount of $5382. Items g h ($2491) are disallowed. Mr. Marnicki's testimony supports these claims.
5. Overhang. The dispute over this item is largely due to the lack of plans and specifications. Not even Mr. McCarty had solid plans to use in installing this item. Mr. Howard did not install this item so his claim must be denied. He is awarded Mr. Keller's figure of $950. (See discussion under Schedule C, Item 2).
6. Site Work. The court has heard sufficient evidence to warrant granting Howard the contract price of $2700.
8. Storm Sewer. As each party lists the amount of $8966 and Schedule C, Item 4 indicates agreement, this will be treated as such, though captioned disputed.
9. Fill. Howard is entitled to the amount claimed for this item, this conclusion following a re-reading of testimony of Howard and Keller. The $9975 credit to Howard is found appropriate.
1011. Sidewalks. Testimony on this was contradictory. The court finds Keller's figures the more reasonable. Howard is CT Page 4530 entitled to $3500.
13. Install Doors. There being no evidence to support this extra, Keller's figure of $375 is found to be the amount due Howard.
14. HVAC Steel. On the evidence, the court finds Howard is entitled to a credit for this item. However, the overhead charge is deducted since there was no agreement that charges for extras would be so computed. The net credit is $2532. The profit portion is allowed as part of the reasonable value of the work performed.
15. Structural Steel. This is a partial repetition of Item 2, Schedule B. Keller was given a credit there for $1630.45. Howard is therefore entitled to the balance of $14,370.
16. Foundation Insulation. As with several other items in dispute, Keller asserts an agreed price. However, only on the continuation sheets prepared by Keller do these "agreed prices" appear. In this instance, the material alone was almost as much as Keller's "agreed price." The overhead claims is denied, but Howard is awarded $2,081. (See comments, Item 14 above).
17. Sheetrock, and 18 Frame Wall. Here, the cost of materials provided exceeds the "agreed price" claimed by Keller. Again, the "agreed prices" appear only on the last continuation sheet (Exhibit 14). The agreed price for Item 18 is listed at $950. In his testimony, Keller said these items were included under Item 12 of the Contract, Exhibits 40 or TT. Howard's presentation of these items is the more credible. Again, the overhead claim is deducted, the net Howard credit is $3711.
19. Install Catch Basin, and 25 Change Catch Basin. While Keller claims an agreed price of $1100, there is no price indicated on the continuation sheet where Item 19 appears as Item 21. Item 25 does not appear at all, but Mr. Bilides stated the catch basin had to be re-worked because the town rejected Mr. Keller's revision (Exhibit 8). Again, the materials cost alone is almost equal to Keller's "agreed price." Howard is entitled to these items, less overhead, for a credit of $3322.
20. HVAC Curbs. In view of the court's finding on Item 1, Schedule C, the Keller figure of $300 is accepted as the proper figure due Howard. CT Page 4531
21. Move Steel Columns. The court concludes Howard has not sustained his burden of proof on this claim.
22. Install Cantilevered Roof. The court finds Howard is entitled to this credit, less the overhead claim, in the amount of $1761. Howard's explanation to the court, utilizing Exhibit 33, is found to be dispositive of this issue.
23. Insulate Front Wall. Keller argues this item is included in Item 12 of the contract under "Building face." That item is not explained further in the document (Exhibits 40 and TT), nor in any plans or specification. Other interior insulation items were, according to Keller, "agreed to." This one was included in Item 12 of the continuation sheets prepared by Keller. The court finds this ambiguity or inconsistency should be resolved in Howard's favor. His net award is found to be $994.
26. Install Rain Drains. This claim is disallowed. (See also, Schedule C, Item 1)
27. Water Company Vault. Keller claims this was done without authorization but doesn't deny it was needed and doesn't question its cost. Howard testified to proceeding in the normal course and installing this in process, assuming he was to do it. No one told him he was not to install it. Howard is entitled to a credit of $1179, net.
28. Cross Bracing. This claim is denied. There is no substantiation for it.
29. Re-dig Trench, and 31 Re-dig Slab. The court accepts Howard's explanation for these items to be reasonable. The net credit is found to be $2185 and $836 respectively.
30. Add Slab Re-bars. This claim by Howard is denied in light of the testimony of Mr. Marnicki.
32. Time Allocated To Town. This claim is denied for lack of substantiation and authorization by Keller.
34. Remove trees, route 1. The court finds Howard's figure the more reasonable for work of this nature on a state highway. The net credit is $660.
35. Clean Building. This claim is denied as it should be CT Page 4532 included with the basic contract.
36. Furniture Store Wall. Howard is awarded $358 net in accordance with findings in Items 17, 18 and 23 above.
37. Install Concrete Platform. Keller's figure of $420 is awarded as a credit to Howard.
38. Vault for 30" Pipe. Howard explained this item in detail, partly in response to the court's questions. The court finds a net award of $1793. to be reasonable.
COMMENTARY
In addressing the above Schedules B, C, and D, the court finds Keller to have waived the requirement of written change orders and that the parties regularly orally modified the contract.
The court relied in part on Howard's statements and attached invoice, Exhibits 32, 33, 35 and 53.
The awards to Howard on extras were abased on quantum meruit, where appropriate the figures offered by Mr. Keller, and the failure of Keller to object to Howard's claims as being unreasonable.
SCHEDULE E
 Delay Costs
Keller seeks $32,559.61 in damages allegedly incurred because Howard failed to complete the project on time or left work to be completed by others. His stated losses cover a five month period during which he claims he should have been able to rent two stores in the building. In addition to the rental income, he would have had the tenants pay taxes and insurance which he had to pay instead.
Keller testified that the project completion time should have been four months but instead was extended by five months. There is nothing in the evidence, however, to support this four month completion time as a contractual item. The only written document, whether one adopts Exhibit 40 or Exhibit TT, is silent as to a commencement date, completion time, or completion date. CT Page 4533
Stephen B. Dudley, the Branford town engineer, testified as to the project permit schedule. The first permit wasn't issued until May 22, 1992. Almost immediately a problem arose over Keller's plan to create a curb cut on a residential street. This resulted in a cease and desist order against construction issuing on August 26, 1992. This order remained in effect until September 8, 1992, though work had at some point resumed at Keller's risk. The site plan with conditions was not approved until December 3, 1992. A certificate of occupancy was not issued until February 25, 1993. This certificate was issued subject to Keller's fulfilling zoning conditions.
Mr. Howard testified about delays which occurred because of events over which he claimed he had no control. Gordon Bilides, Keller's engineer, described plan changes in September and October of 1992, including a substantial driveway change. On December 1, 1992 he met with a neighbor to discuss an eight foot easement that Keller needed. As late as December 22, Howard met with town officials to discuss the plan revisions, with an eye toward a building opening on March 1, 1993.
Bilides also testified about a town rejection of a change proposed by Keller in November 1992 (Exhibit 8). This required additional work to be done on a catch basin and the water meter site.
While there were delays which Howard admitted were his fault, there was unrebutted testimony of delays not chargeable to him. Thus, there were piles which were off center due to boulders underground. Richard Marnicki, Keller's structural engineer, stated these had to be connected by large pile caps to re-bars. He also stated that no construction could have commenced until the plans of August 1992 were completed. These plans added all new roof supports, bolts, and special studs.
There were also delays caused by sub-contractors employed by Keller to do work he had reserved to himself — the overhang, plumbing, and landscaping, for example.
In the absence of evidence indicating the length of delays and their specific causes coupled with an agreed upon work schedule or completion date, Keller's claim for damages caused by delayed completion must be denied. CT Page 4534
SUMMARY
 Due: Howard Keller
Schedule B 2 1,630.45 3 1,332.82 -------- 2,963.27
Schedule C 1 2,985.00 2 2,812.84 6 950.00 7 300.00 -------- 7,047.84 Total Schedules B C $10,011.11
Schedule D 1 5,382.00 5 950.00 6 2,700.00 9 9,975.00 10 11 3,500.00 13 375.00 14 2,532.00 15 14,370.00 16 2,081.00 17 18 3,711.00 19 3,322.00 20 300.00 22 1,761.00 23 994.00 27 1,179.00 29 2,185.00 31 836.00 34 660.00 36 358.00 37 420.00 38 1,793.00 --------- $59,384.00
Credits to Howard, per agreement:
Schedule D Item 1 12,884.00 CT Page 4535 2 7,200.00 3 26,500.00 4 19,800.00 8 8,966.00 12 6,000.00 24 138.00 --------- $81,488.00
Total Howard credits: $140,872.00 Less Keller credits 10,011.11 Less payment 114.534.00 ---------- 124,545.11
Balance due Howard $16,326.89
CONCLUSION
 As for the second case
Judgment may enter for William Howard to recover of the defendants Harry and Beverly Keller the sum of $16,326.89, plus taxable costs.
With respect to the judgment in favor of Shoreline Concrete in Part I hereof, based on the findings and decision in the second case, the court finds Howard was not paid sufficient funds to pay Shoreline in full.
Anthony, V. DeMayo Judge Trial Referee